**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOSEPH WALSH | : | |
| | : | **CIVIL ACTION No. 25-05978** |
| **Plaintiff,** | : | |
| | : | |
| V. | : | **JURY DEMANDED** |
| | : | |
| MONTGOMERY COUNTY, | : | |
| BUCKS COUNTY, | : | |
| PRIMECARE, | : | |
| JAVIER VAZQUEZ, | : | |
| REUBEN STOLTZFUS, | : | |
| AMY CENEVIVA, | : | |
| JAMES LINK, | : | |
| DON THOMAS, | : | |
| INNA PANASENKO, | : | |
| LINDA RICCI, | : | |
| DAVID BURKE, | : | |
| EVETTE GORDON, | : | |
| GINA RODRIGUEZ , | : | |
| | : | |
| **and,** | : | |
| | : | |
| JOHN AND JANE DOES 1- 10 | : | |
| **Defendants.** | : | |

**AMENDED COMPLAINT**

**JURISDICTION AND VENUE**

1.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343 because this action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983, the Americans with Disabilities Act, and the Rehabilitation Act.

2.    This Court has supplemental jurisdiction over Plaintiff's related state law claims pursuant to 28 U.S.C. § 1367.

1

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as the events giving rise to these claims occurred in Bucks County, Pennsylvania, which is located within the Eastern District of Pennsylvania.

**<u>INTRODUCTION</u>**

4. Plaintiff, Joseph Walsh, a paraplegic male and pretrial detainee, brings this civil rights and disability discrimination action arising from Defendants' failure to provide constitutionally adequate medical care, reasonable disability accommodations, and humane conditions of confinement during multiple periods of incarceration in county-operated correctional facilities.

5. During Plaintiff's incarceration at Montgomery County Jail and later at Bucks County Jail from on or about August 23, 2024 through September 25, 2024, Plaintiff repeatedly notified correctional and medical staff of his disability-related needs and heightened risk of pressure injury. Despite this notice, Defendants failed to provide medically necessary accommodations, confiscated Plaintiff's custom medical equipment, failed to implement basic preventative care protocols, and subjected Plaintiff to unsanitary and degrading conditions.

6. As a direct result of these failures, Plaintiff developed a severe, necrotic, and infected pressure ulcer that progressed without appropriate intervention while he remained in custody. Upon his release, Plaintiff presented to the emergency department with a large, tunneling, malodorous sacral wound that was later revealed to be a Stage IV pressure injury, requiring hospitalization and ongoing medical treatment.

7. A photograph taken upon Plaintiff's admission to Jefferson Lansdale Hospital on September 25, 2024 documents the severity of the wound at that time. The photograph depicts a large, tunneling sacral ulcer with necrotic tissue and chronic drainage, corroborating

2

contemporaneous medical findings that the wound was advanced, infected, and developed over an extended period rather than as a sudden or acute injury.



8.      Plaintiff's injuries were the foreseeable consequence of Defendants' systemic failures to train staff, adopt disability-responsive policies, and implement medically necessary and legally required accommodations. Defendants' acts and omissions violated Plaintiff's rights under the Fourteenth Amendment to the United States Constitution, the Americans with Disabilities Act, the Rehabilitation Act, and Pennsylvania law.

### **PARTIES**

9.      Plaintiff Joseph Walsh is an adult individual who, at all relevant times, resided in the Commonwealth of Pennsylvania. Plaintiff is paraplegic. Plaintiff was incarcerated at a correctional facility operated by Montgomery County prior to his transfer on or about August 23, 2024, and

thereafter was incarcerated at Bucks County Jail, operated by Bucks County, from August 23, 2024 through September 25, 2024.

10.    Defendant Montgomery County is a political subdivision of the Commonwealth of Pennsylvania responsible for the operation, supervision, and oversight of Montgomery County Correctional Facility, including the promulgation and enforcement of correctional policies and the provision of constitutionally adequate conditions of confinement and medical care to detainees in its custody.

11.    Defendant Bucks County is a political subdivision of the Commonwealth of Pennsylvania responsible for the operation, supervision, and oversight of Bucks County Jail, including the promulgation and enforcement of correctional policies and the provision of inmate medical care through private contractors.

12.    At all relevant times, Montgomery County Correctional Facility and Bucks County Jail operated as correctional facilities of their respective County Defendants and not as separate legal entities. All acts and omissions alleged herein were undertaken by Montgomery County, Bucks County, PrimeCare Medical, Inc. (PrimeCare), and/or their respective agents, employees, or contractors acting within the scope of their duties.

13.    Defendant PrimeCare is a private entity contracted by Bucks County to provide medical services to detainees housed at Bucks County Jail. At all relevant times, PrimeCare acted under color of state law and was responsible for providing medical care in compliance with constitutional standards and accepted professional practices.

14.    Defendant Javier Vazquez is a Certified Registered Nurse Practitioner employed by PrimeCare who performed Plaintiff's initial medical intake evaluation and participated in Plaintiff's medical care during his incarceration at Bucks County Jail.

15.    Defendants Reuben Stoltzfus, Amy Ceneviva, James Link, Don Thomas, Inna Panasenko, and Linda Ricci are Registered Nurses employed by PrimeCare who provided nursing care to Plaintiff during his incarceration at Bucks County Jail and are sued in their individual capacities for their respective acts and omissions as alleged herein.

16.    Defendants David Burke and Evette Gordon are Licensed Practical Nurses employed by PrimeCare who provided medical care to Plaintiff during his incarceration and participated in the assessment, monitoring, and documentation of Plaintiff's medical condition.

17.    Defendant Gina Rodriguez is a medical staff member employed by PrimeCare, whose specific professional credentials are presently unknown, who provided medical care to Plaintiff and had documented involvement in Plaintiff's medical records during his incarceration.

18.    Defendants John and Jane Does 1–10 are correctional officers and/or supervisory personnel employed by or acting on behalf of Montgomery County and/or Bucks County, whose identities are presently unknown despite reasonable investigation. Each Doe Defendant had personal involvement in the acts and omissions alleged herein and is sued in his or her individual capacity. Plaintiff will seek leave to amend this Complaint to substitute the true names of these Defendants when their identities are ascertained.

## FACTUAL ALLEGATIONS

19.    Plaintiff was transferred to the Bucks County Jail on or about August 23, 2024. At the time of intake, Plaintiff had no documented Stage III or Stage IV pressure injuries. Plaintiff is paraplegic and lacks sensation and mobility below the waist, a condition known to Defendants at intake. As a result, Plaintiff required preventive measures to avoid pressure injuries, including pressure-relieving bedding, regular skin integrity assessments, bowel and bladder accommodations, and physical assistance with repositioning for pressure relief.

20.     Plaintiff's initial medical intake evaluation was performed by Defendant Javier Vazquez, a Certified Registered Nurse Practitioner employed by PrimeCare. During that intake evaluation, Javier Vazquez documented an abnormal skin finding, specifically noting a "wound to sacrum." This finding placed Defendants on actual notice that Plaintiff was at heightened risk for pressure injury and required immediate preventive intervention, monitoring, and accommodation.

21.     Despite this documented abnormal finding, Defendants failed to initiate or enforce appropriate preventive protocols. Plaintiff was not placed on a consistent turning and repositioning schedule, was not provided adequate pressure-relieving equipment, and was not supplied tools necessary to monitor his own skin integrity, such as a hand mirror, despite his inability to feel developing wounds due to loss of sensation.

22.     Shortly after intake, Defendants confiscated Plaintiff's custom wheelchair, which had been medically prescribed and specifically fitted to prevent pressure injuries. In its place, Defendants issued a jail-provided wheelchair that lacked appropriate padding, postural support, and pressure-relief features. Defendants further confiscated the stabilizing board necessary for Plaintiff's cushion to function therapeutically, rendering the replacement wheelchair harmful and eliminating its medical benefit.

23.     Plaintiff's Full Patient History and medical records from his period of incarceration identify multiple named medical staff defendants, including six (6) Registered Nurses, two (2) Licensed Practical Nurses, and additional medical personnel, all of whom are named as Defendants in this action and were employed by PrimeCare. These records reflect that each such Defendant had direct responsibility for, and personal involvement in, Plaintiff's medical care, including monitoring his condition, documenting skin assessments, and implementing, or failing to implement, necessary pressure-injury prevention measures during Plaintiff's incarceration.

24.     Despite Plaintiff's known paraplegia, the abnormal skin finding documented at intake, and Plaintiff's ongoing complaints, the medical records reflect only a single documented instance of repositioning, indicating that Plaintiff was turned at approximately 12:30 a.m. and 4:30 a.m. on September 14, 2024. The absence of regular, documented repositioning demonstrates that Defendants failed to implement basic and medically necessary pressure-injury prevention measures.

25.     On or about September 7, 2024, Defendant James Link, a Registered Nurse employed by PrimeCare, documented in Plaintiff's medical records that Plaintiff required education regarding repositioning in bed for pressure relief. Plaintiff reported to James Link that turning and propping caused significant shoulder pain related to a prior injury. Despite this information, James Link failed to ensure modification of Plaintiff's care plan, failed to initiate or secure staff-assisted repositioning or alternative pressure-relief measures, and failed to escalate Plaintiff's care to address his physical limitations and known risk of pressure injury.

26.     Throughout his incarceration, Plaintiff repeatedly notified both correctional staff and the named medical Defendants of his need for accommodations and of worsening symptoms, including skin breakdown, drainage, and pain. Plaintiff's condition visibly deteriorated over time. The wound emitted malodorous drainage and showed signs of infection that were observable to staff and required escalation of care. Despite this notice and the obvious nature of the risk, Defendants failed to intervene, escalate treatment, or provide appropriate wound care.

27.     As a direct and proximate result of Defendants' acts and omissions, Plaintiff developed a severe pressure injury while incarcerated. While in custody, the wound was documented as "unstageable" due to Defendants' failure to debride necrotic tissue, obscuring its depth and severity. Upon Plaintiff's release on September 25, 2024, and subsequent presentation to the

emergency department, debridement was immediately recommended, and the wound was revealed to be a Stage IV pressure injury, confirming the extent of deterioration that occurred under Defendants' care.

28.     Plaintiff was forced to return to the hospital within hours due to the severity of the wound and his inability to manage it independently. Plaintiff remains under the care of Dr. Robert Kolecki and requires ongoing medical treatment as a result of the injuries sustained during his incarceration.

29.     The chronic, necrotic, infected, and malodorous nature of the wound demonstrates that it developed over an extended period and was repeatedly ignored. Plaintiff was frequently left soiled in urine and wound drainage, exposing him to infection, exacerbating his injuries, and depriving him of basic human dignity.

30.     At all relevant times, Defendants Montgomery County and Bucks County and PrimeCare, through their policymakers, supervisors, and named medical staff, failed to adopt, implement, or enforce adequate policies, practices, and training protocols for the care of paraplegic detainees. These failures included inadequate intake screening for high-risk inmates, insufficient pressure-injury prevention measures, failure to ensure appropriate documentation and performance of repositioning, and failure to provide reasonable accommodations required by the ADA and Rehabilitation Act. These systemic failures were a moving force behind Plaintiff's injuries.

31.     Prior to his transfer to Bucks County Jail on or about August 23, 2024, Plaintiff was incarcerated at a correctional facility operated by Montgomery County (the "Prior Facility").

32.     Plaintiff is paraplegic and lacks sensation and mobility below the waist, a condition that existed throughout his incarceration at the Prior Facility and placed him at a known and substantial risk for pressure injuries absent appropriate preventive care.

33.     Upon Plaintiff's transfer to Bucks County Jail, the initial medical intake evaluation documented an abnormal skin finding, specifically noting a "wound to sacrum." This documentation reflects that the injury began prior to Plaintiff's arrival at Bucks County Jail.

34.     The presence of a sacral wound at intake demonstrates that Plaintiff's pressure injury developed, or began developing, while Plaintiff was in the custody of Montgomery County at the Prior Facility.

35.     At all relevant times during Plaintiff's incarceration at the Prior Facility, Montgomery County was responsible for Plaintiff's housing, supervision, and access to medical care, including intake screening, monitoring of high-risk detainees, pressure-injury prevention, and provision of reasonable accommodations for detainees with mobility impairments.

36.     Upon information and belief, Montgomery County failed to adequately identify, monitor, and protect Plaintiff from the development of pressure injuries during his incarceration at the Prior Facility, despite Plaintiff's known paraplegia and heightened risk.

37.     The failure of Montgomery County to implement adequate intake screening, pressure-injury prevention measures, and medical monitoring contributed to the initial development and early progression of Plaintiff's sacral wound prior to his transfer.

38.     Plaintiff's subsequent incarceration at Bucks County Jail occurred against the backdrop of this existing injury, which worsened due to additional failures by Defendants following transfer, as described herein. Plaintiff's injuries were caused by the cumulative and successive failures of Defendants during distinct periods of custody, as further set forth below.

## COUNT I

### 42 U.S.C. § 1983 – Fourteenth Amendment
### (Deliberate Indifference to Serious Medical Needs)
### Against Individual Defendants Only

39.    Plaintiff incorporates by reference all prior paragraphs as if fully set forth herein.

40.    At all relevant times, Plaintiff was a pretrial detainee confined at Bucks County Jail and was entitled under the Fourteenth Amendment to be free from punishment and to receive constitutionally adequate medical care.

41.    Plaintiff suffered from objectively serious medical needs, including paraplegia with loss of sensation and mobility below the waist, placing him at a heightened and well-known risk for pressure injuries, infection, and serious complications if preventive measures were not implemented.

42.    Each of the Individual Defendants, medical providers employed by PrimeCare, including Javier Vazquez, the named Registered Nurses, Licensed Practical Nurses, and other named medical staff—acted under color of state law and had direct responsibility for Plaintiff's medical assessment, monitoring, accommodation, and care during his incarceration.

43.    The Individual Defendants had actual knowledge of Plaintiff's serious medical needs and risk of harm, including but not limited to:

   a. Plaintiff's known paraplegia and immobility;
   b. the abnormal skin finding documented at intake noting a "wound to sacrum";
   c. Plaintiff's repeated complaints and requests for assistance and accommodations; and
   d. observable signs of deterioration, including skin breakdown, drainage, odor, and infection.

44.    Despite this knowledge, the Individual Defendants knowingly and recklessly disregarded a substantial risk to Plaintiff's health and safety by, inter alia:

   a. failing to initiate and enforce medically necessary pressure-injury prevention protocols;

10

b. failing to ensure regular and adequate turning and repositioning, as reflected by the absence of meaningful documentation and care;

c. confiscating Plaintiff's medically prescribed custom wheelchair and issuing an inappropriate replacement lacking pressure-relief and postural support;

d. failing to provide reasonable accommodations and tools necessary for Plaintiff to monitor his own skin integrity;

e. failing to modify Plaintiff's care plan or provide staff-assisted repositioning after being informed that turning caused shoulder pain related to a prior injury; and

f. failing to timely escalate care, provide appropriate wound treatment, or intervene as Plaintiff's condition visibly worsened.

45. The acts and omissions of the Individual Defendants were not the result of reasonable medical judgment, negligence, or inadvertence, but constituted deliberate indifference to Plaintiff's serious medical needs and imposed punishment unrelated to any legitimate governmental objective.

46. As a direct and proximate result of the Individual Defendants' deliberate indifference, Plaintiff suffered severe and preventable harm, including the development and progression of a Stage IV pressure injury, infection, hospitalization, ongoing medical treatment, pain and suffering, emotional distress, and loss of dignity.

47. The Individual Defendants' conduct violated Plaintiff's rights under the Fourteenth Amendment to the United States Constitution, actionable pursuant to 42 U.S.C. § 1983.

## COUNT II

### 42 U.S.C. § 1983 – Municipal Liability (Monell)
### Against Montgomery County, Bucks County, and PrimeCare

48. Plaintiff incorporates by reference all prior paragraphs as if fully set forth herein.

49. At all relevant times, Defendant Montgomery County was a municipal entity responsible for the operation of Montgomery County Correctional Facility, where Plaintiff was incarcerated prior to his transfer on or about August 23, 2024. Defendant Bucks County was a municipal entity responsible for the operation of Bucks County Jail, where Plaintiff was incarcerated following his

11

transfer. Each County Defendant was responsible for ensuring that detainees in its custody received constitutionally adequate medical care.

50.    Defendant PrimeCare was at all relevant times a private entity contracted by Bucks County to provide medical services to detainees at Bucks County Jail, and acted under color of state law for purposes of 42 U.S.C. § 1983.

51.    Each municipal Defendant is liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), because Plaintiff's constitutional injuries were caused by its own policies, customs, practices, and/or deliberate failures to train, supervise, and oversee staff, which amounted to deliberate indifference to the serious medical needs of detainees.

A. Monell Liability – Montgomery County (Prior Custody)

52.    During the period of Plaintiff's incarceration at Montgomery County Correctional Facility, Defendant Montgomery County maintained policies, customs, and practices that failed to adequately identify, monitor, and protect paraplegic detainees at high risk for pressure injuries.

53.    These policies, customs, and practices included, but were not limited to:

   a. inadequate intake screening and risk assessment for detainees with mobility impairments;
   b. failure to implement and enforce pressure-injury prevention protocols;
   c. failure to provide adequate medical monitoring and early intervention for skin breakdown; and
   d. inadequate training and supervision of staff responsible for the care of disabled detainees.

54.    As reflected by the medical intake documentation upon Plaintiff's transfer, which noted a "wound to sacrum," Plaintiff's pressure injury developed or began developing while he was in the custody of Montgomery County.

12

55.     Defendant Montgomery County's policies, customs, and failures were a moving force behind the initial development and early progression of Plaintiff's pressure injury and the resulting violation of his constitutional rights.

B. Monell Liability – Bucks County and PrimeCare (Subsequent Custody)

56.     During the period of Plaintiff's incarceration at Bucks County Jail, Defendants Bucks County and PrimeCare maintained policies, customs, and practices that resulted in deliberate indifference to Plaintiff's serious medical needs.

57.     These policies, customs, and practices included, but were not limited to:

   a. failure to implement and enforce adequate intake screening and care-planning for high-risk detainees transferred with existing wounds;
   b. failure to require and ensure consistent turning, repositioning, and skin-integrity monitoring;
   c. permitting the confiscation of medically prescribed mobility and pressure-relief equipment without providing appropriate alternatives;
   d. failure to provide reasonable accommodations necessary for detainees with disabilities;
   e. inadequate documentation, oversight, and supervision of medical care; and
   f. failure to ensure timely escalation of care despite obvious signs of deterioration, infection, and tissue necrosis.

58.     Defendants Bucks County and PrimeCare knew or should have known that these deficiencies posed a substantial risk of serious harm to paraplegic detainees transferred with existing wounds, yet deliberately failed to take reasonable steps to prevent further injury.

59.     The policies, customs, and practices of Defendants Bucks County and PrimeCare were a moving force behind the worsening and progression of Plaintiff's pressure injury to a Stage IV wound and the resulting constitutional violations.

60.     As a direct and proximate result of the unconstitutional policies, customs, and practices of the municipal Defendants, Plaintiff suffered severe physical injury, infection, hospitalization, pain and suffering, emotional distress, and loss of dignity.

## COUNT III

### Americans with Disabilities Act (Title II)
### 42 U.S.C. § 12132
### Against Montgomery County and Bucks County

61.    Plaintiff incorporates by reference all prior paragraphs as if fully set forth herein.

62.    Plaintiff is a qualified individual with a disability within the meaning of the Americans with Disabilities Act ("ADA"), in that he is paraplegic and substantially limited in major life activities, including mobility, self-care, and bodily functions.

63.    At all relevant times, Defendants Montgomery County and Bucks County were public entities within the meaning of Title II of the ADA and operated correctional facilities and related services, programs, and activities.

64.    During Plaintiff's incarceration at facilities operated by Defendants Montgomery County and Bucks County, Plaintiff was entitled to reasonable accommodations necessary to ensure safe access to confinement and related services, programs, and activities.

65.    Defendants Montgomery County and Bucks County had actual knowledge of Plaintiff's disability and his need for accommodations, including but not limited to pressure-injury prevention measures, appropriate mobility equipment, assistance with repositioning, and monitoring of skin integrity.

66.    Despite this knowledge, Defendants failed to provide reasonable accommodations to Plaintiff, including by:

   a. failing to implement appropriate pressure-injury prevention protocols for a paraplegic detainee;
   b. failing to provide or ensure access to appropriate mobility and pressure-relief equipment;
   c. failing to provide assistance with repositioning and monitoring necessary to mitigate known risks associated with Plaintiff's disability; and
   d. failing to modify policies, practices, or procedures to account for Plaintiff's physical limitations.

14

67. As a result of Defendants' failures, Plaintiff was denied meaningful access to safe confinement and was subjected to conditions that exacerbated his disability and caused preventable injury.

68. Defendants' acts and omissions constituted discrimination against Plaintiff by reason of his disability, in violation of Title II of the ADA.

69. As a direct and proximate result of Defendants' ADA violations, Plaintiff suffered severe physical injury, pain and suffering, infection, hospitalization, emotional distress, and loss of dignity.

## COUNT IV

**Rehabilitation Act**
**29 U.S.C. § 794**
**Against Montgomery County and Bucks County**

70. Plaintiff incorporates by reference all prior paragraphs as if fully set forth herein.

71. Plaintiff is an individual with a disability within the meaning of Section 504 of the Rehabilitation Act.

72. At all relevant times, Defendants Montgomery County and Bucks County received federal financial assistance and were subject to the requirements of Section 504 of the Rehabilitation Act.

73. Plaintiff was otherwise qualified to participate in or receive the benefits of Defendants' services, programs, and activities, including safe housing, medical monitoring, and basic conditions of confinement.

74. Defendants had actual knowledge of Plaintiff's disability and need for accommodations but failed to provide reasonable accommodations necessary to ensure Plaintiff's safe and meaningful access to confinement.

15

75.    Defendants' failure to accommodate Plaintiff's disability resulted in Plaintiff being subjected to conditions that caused preventable injury and exacerbated his medical condition.

76.    Plaintiff was excluded from participation in, denied the benefits of, or subjected to discrimination under Defendants' programs, services, and activities solely by reason of his disability, in violation of Section 504 of the Rehabilitation Act.

77.    Defendants acted with deliberate indifference to Plaintiff's federally protected rights.

78.    As a direct and proximate result of Defendants' violations of the Rehabilitation Act, Plaintiff suffered severe physical injury, pain and suffering, infection, hospitalization, emotional distress, and loss of dignity.

## COUNT V

### Professional Negligence (Medical Malpractice)
### Against PrimeCare and Individual Medical Defendants

79.    Plaintiff incorporates by reference all prior paragraphs as if fully set forth herein. Each Medical Defendant is sued for his or her own acts and omissions, and Defendant PrimeCare is sued on the basis of respondeat superior.

80.    At all relevant times, Defendants PrimeCare, Javier Vazquez, the named Registered Nurse Defendants, Licensed Practical Nurse Defendants, and other named medical staff (collectively, the "Medical Defendants") were engaged in the practice of medicine and/or nursing and owed Plaintiff a duty to exercise that degree of care, skill, and learning ordinarily possessed and exercised by reasonably prudent medical professionals under similar circumstances.

81.    Plaintiff was a patient under the care and treatment of the Medical Defendants while incarcerated at Bucks County Jail, and the Medical Defendants undertook responsibility for Plaintiff's medical assessment, monitoring, accommodation, and treatment.

16

82.    Plaintiff is paraplegic and lacked sensation and mobility below the waist, placing him at a heightened and well-known risk for pressure injuries. This condition and risk were known to the Medical Defendants, including through intake documentation noting an abnormal skin finding ("wound to sacrum") and subsequent observations and complaints.

83.    The Medical Defendants breached the applicable standards of care by acts and omissions including, but not limited to, the following:

   a. failing to timely and adequately assess and monitor Plaintiff's skin integrity;
   b. failing to implement and enforce appropriate pressure-injury prevention measures, including regular and adequate turning and repositioning;
   c. failing to provide or ensure access to appropriate pressure-relieving equipment and mobility supports;
   d. confiscating or permitting the confiscation of medically prescribed therapeutic equipment without providing appropriate alternatives;
   e. failing to modify Plaintiff's care plan or provide staff-assisted repositioning in light of Plaintiff's physical limitations and reported pain;
   f. failing to timely escalate care, debride necrotic tissue, or provide appropriate wound management as Plaintiff's condition worsened; and
   g. failing to document and coordinate care in a manner consistent with accepted medical standards.

84.    As a direct and proximate result of the Medical Defendants' negligence, Plaintiff suffered preventable and severe injuries, including the development and progression of a Stage IV pressure injury, infection, hospitalization, ongoing medical treatment, pain and suffering, emotional distress, and loss of dignity.

85.    Defendant PrimeCare is liable for the negligent acts and omissions of its employees and agents, including the individual Medical Defendants, who were acting within the course and scope of their employment at all relevant times.

86.    Plaintiff has complied with  Pa.R.C.P. 1042.3 and a Certificate of Merit has already been filed in this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, and award the following relief:

a.      Compensatory damages in an amount to be determined by the trier of fact;

b.      Punitive damages against the individual Defendants where permitted by law;

c.      Declaratory relief declaring that Defendants' acts and omissions violated Plaintiff's rights under the United States Constitution, the Americans with Disabilities Act, and the Rehabilitation Act;

d.      Injunctive relief as appropriate to prevent future violations;

e.      Reasonable attorneys' fees and costs pursuant to 42 U.S.C. §§ 1988 and 12205, and 29 U.S.C. § 794a;

f.      Pre-judgment and post-judgment interest as permitted by law; and

g.      Such other and further relief as the Court deems just and proper.

Respectfully submitted,

**VAN DER VEEN, HARTSHORN,
LEVIN & LINDHEIM**

DATE: January 27, 2026          BY: _____
Michael T. van der Veen, Esquire
Steven R. Bryson, Esquire
1219 Spruce Street
Philadelphia, PA 19107
mtv@mtvlaw.com
sbryson@mtvlaw.com
P: (215) 546-1000
F: (215) 526-8529
*Attorneys for Plaintiff*