IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOSEPH WALSH                              :          CIVIL ACTION
                                          :
        v.                                :
                                          :
MONTGOMERY COUNTY, ET AL.                 :          NO. 25-5978

**MEMORANDUM**

**Padova, J.**                                                     **May 26, 2026**

Plaintiff Joseph Walsh, who is paraplegic, commenced this action alleging civil rights violations and disability discrimination after he developed a severe, infected pressure ulcer while incarcerated as a pretrial detainee in county facilities. The Amended Complaint names as Defendants Montgomery County, Bucks County, PrimeCare Medical, Inc. ("PrimeCare"), medical personnel employed by PrimeCare, and various Jane and John Doe correctional officers and/or supervisory personnel employed by Bucks and Montgomery Counties. Bucks County has filed a Motion to Dismiss the three claims asserted against it, i.e., claims pursuant to 42 U.S.C. § 1983, the Rehabilitation Act (the "RA"), 29 U.S.C. § 701 et seq., and the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12101 et seq. For the following reasons, we grant the Motion in part and deny it in part.

I.    **BACKGROUND**

The Amended Complaint alleges that Plaintiff is a paraplegic male who lacks sensation or mobility below his waist. (Am. Compl. ¶ 19.) On August 23, 2024, while a pretrial detainee, Plaintiff was transferred from the Montgomery County Correctional Facility to the Bucks County Jail. (Id. ¶¶ 9, 19.) Bucks County contracts with Defendant PrimeCare to provide medical services to detainees at the Bucks County Jail. (Id. ¶ 13.) On intake at the jail, Plaintiff had no Stage III or IV pressure injuries, but the intake evaluation notes document that he had a "wound

to sacrum." (Id. ¶¶ 19-20.) Despite that notation, Defendants "failed to initiate or enforce appropriate preventive protocols." (Id. ¶ 21.) Specifically, they did not set up a "consistent turning and repositioning schedule," or provide "adequate pressure relieving equipment" or tools, such as a hand mirror to permit Plaintiff "to monitor his own skin integrity." (Id.) In addition, Defendants confiscated Plaintiff's medically-prescribed custom wheelchair, which was equipped with pressure-relief features, and instead provided him with a jail-approved wheelchair, which lacked such features. (Id. ¶ 22.) Plaintiff's medical records from his period of incarceration, which lasted until September 25, 2024, reveal that he was treated by six registered nurses, two licensed practical nurses, and other medical personnel. (Id. ¶ 23.) The Amended Complaint alleges that "each such Defendant had direct responsibility for, and personal involvement in, Plaintiff's medical care, including monitoring his condition, documenting skin assessment, and implementing, or failing to implement, necessary pressure injury prevention measures during Plaintiff's incarceration." (Id. ¶ 23.)

The medical records show that, on September 7, 2024, Defendant James Link, a registered nurse employed by PrimeCare, wrote in Plaintiff's record that Plaintiff needed to be educated about repositioning in bed. (Id. ¶ 25.) Plaintiff told Link that turning and propping caused him significant shoulder pain, but Link did not take measures to schedule staff-assisted repositioning or provide other pressure-relief strategies to address Plaintiff's physical limitations. (Id.) In the end, Plaintiff's medical records document only a single day on which Plaintiff was repositioned by staff, September 14, 2024, at 12:30 a.m. and 4:30 a.m. (Id. ¶ 24.)

Throughout his incarceration, Plaintiff repeatedly notified correctional staff and medical personnel of his worsening symptoms, including skin breakdown, wound drainage, and pain. (Id. ¶ 26.) His wound "emitted malodorous drainage" and showed observable signs of infection, but

2

Defendants did not "intervene, escalate treatment or provide appropriate wound care."   (Id. ¶ 26.) "Plaintiff was frequently left soiled in urine and wound drainage . . . ."   (Id. ¶ 29.)   Throughout his incarceration, "the wound was documented as 'unstageable' due to Defendants' failure to debride necrotic tissue, obscuring its depth and severity."   (Id. ¶ 27.)

When Plaintiff was released on September 25, 2024, he went to the emergency room, where hospital staff immediately recommended debridement, which revealed a Stage IV pressure injury. (Id. ¶ 27.)   Plaintiff was sent home after treatment, but because of the severity of the wound and Plaintiff's inability to manage it independently, he returned to the hospital within hours, and he has been undergoing medical treatment as a result of his injury since that time.   (Id. ¶ 29.)

Plaintiff commenced this action in mid-October 2025, and filed the Amended Complaint on January 27, 2026.   PrimeCare and the individually-named Defendants filed a joint Answer to the Amended Complaint on February 9, 2026, and Bucks County filed its now-pending Motion to Dismiss the next day.[1]   Bucks County has moved to dismiss the three claims against it: a municipal liability count pursuant to Monell v. Department of Social Services, 436 U.S. 658 (1978), a claim under the ADA, and a claim under the RA.   Plaintiff opposes Bucks County's Motion.

## II.   LEGAL STANDARD

When deciding a motion to dismiss pursuant to Rule 12(b)(6), we "consider only the complaint, exhibits attached to the complaint, [and] matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon [those] documents." Alpizar-Fallas v. Favero, 908 F.3d 910, 914 (3d Cir. 2018) (quoting Mayer v. Belichick, 605 F.3d

---

[1] The docket does not reflect that Montgomery County was ever served with original process, and no attorney has entered an appearance on its behalf.

3

223, 230 (3d Cir. 2010)).   We "accept[] all well-pleaded allegations in the complaint as true and view[] them in the light most favorable to the plaintiff."   Talley v. Pillai, 116 F.4th 200, 206 (3d Cir. 2024) (quoting Warren Gen. Hosp. v. Amgen Inc., 643 F.3d 77, 84 (3d Cir. 2011)).   However, "we need not accept as true a legal conclusion couched as a factual allegation."   Host Int'l, Inc. v. MarketPlace, PHL, LLC, 32 F.4th 242, 248 (3d Cir. 2022) (quotation and citation omitted).

A plaintiff's pleading obligation is to set forth "a short and plain statement of the claim," which "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests."   Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (first quoting Fed. R. Civ. P. 8(a)(2); then quoting Conley v. Gibson, 355 U.S. 41, 47 (1957) (second alteration in original)). The complaint must allege "'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged.'"   Warren Gen. Hosp., 643 F.3d at 84 (quoting Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)).   "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).   In the end, we will grant a motion to dismiss brought pursuant to Rule 12(b)(6) if the factual allegations in the complaint are not sufficient "to raise a right to relief above the speculative level."   Geness v. Admin. Off. of Pa. Cts., 974 F.3d 263, 269 (3d Cir. 2020) (quoting Twombly, 550 U.S. at 555).

## III.   DISCUSSION

### A.   Monell

In Count II of the Amended Complaint, Plaintiff asserts a claim pursuant to 42 U.S.C. § 1983 against both Bucks County and PrimeCare for violation of his constitutional rights arising out of the inadequate medical care he was provided.   "To state a claim under § 1983, a plaintiff

4

must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988) (citations omitted). A municipality like Bucks County "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." Monell, 436 U.S. at 694. Instead, to assert a § 1983 claim against a municipality, i.e., a Monell claim, a plaintiff must allege that his constitutional deprivations were caused by an official policy or custom of the municipality or "by a failure or inadequacy by the municipality that 'reflects a deliberate or conscious choice.'" Forrest v. Parry, 930 F.3d 93, 105 (3d Cir. 2019) (quoting Estate of Roman v. City of Newark, 914 F.3d 789, 798 (3d Cir. 2019)); see also Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 403 (1997) (citations omitted); City of Canton v. Harris, 489 U.S. 378, 388-89 (1989); Reitz v. Cnty. of Bucks, 125 F.3d 139, 145 (3d Cir. 1997) (citing Harris, 489 U.S. at 388-89).

To satisfy the pleading standard with regard to a custom or policy, the plaintiff "must . . . specify what exactly th[e] custom or policy was." McTernan v. City of York, 564 F.3d 636, 658 (3d Cir. 2009) (citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008)). Moreover, "[i]t is well-settled that, if there is no violation in the first place, there can be no derivative municipal claim." Mulholland v. Gov't Cnty. of Berks, 706 F.3d 227, 238 n.15 (3d Cir. 2013) (citing Los Angeles v. Heller, 475 U.S. 796, 799 (1986) (stating that if a municipal employee "inflicted no constitutional injury . . . it is inconceivable that [the municipality] could be liable")) (additional citation omitted).

### 1.   Underlying Constitutional Violation

Bucks County first argues that the Amended Complaint fails to state a cognizable Monell claim because it does not plausibly allege an underlying constitutional violation. See Mosca v.

Cole, 217 F. App'x 158, 165 (3d Cir. 2007) (stating that plaintiff's Monell claim failed "as a matter of course" because plaintiff "ha[d] not established any constitutional violations"); Johnson v. City of Phila., 105 F. Supp. 3d 474, 482 (E.D. Pa. 2015) ("[A] municipality cannot be found liable on a Monell claim where there has been no underlying violation of rights under § 1983." (citing City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986))), aff'd, 837 F.3d 343 (3d Cir. 2016).   For pretrial detainees like Plaintiff, claims are evaluated under the Due Process Clause of the Fourteenth Amendment rather than the cruel and unusual punishment provision of the Eighth Amendment.   See Hubbard v. Taylor, 399 F.3d 150, 158 (3d Cir. 2005).   However, the standard for claims related to a prisoner's medical needs is essentially the same under the two Amendments. See Parkell v. Morgan, 682 F. App'x 155, 159-60 (3d Cir. 2017) (per curiam) (citations omitted); see also Moore v. Luffey, 767 F. App'x 335, 340 n.2 (3d Cir. 2019) (citing Natale v. Camen Cnty. Corr. Facility, 318 F.3d 575, 581 (3d Cir. 2003)).   Thus, in order to state a Fourteenth Amendment claim arising from inadequate medical care, a plaintiff must allege facts that raise a reasonable inference that that prison officials acted with deliberate indifference to his serious medical need. Farmer v. Brennan, 511 U.S. 825, 835 (1994).   A prison official is only deliberately indifferent if he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."   Id. at 837.   A serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering."   Colburn v. Upper Darby Twp., 946 F.2d 1017, 1023 (3d Cir. 1991).

Bucks County argues that the Amended Complaint fails to allege facts that show that any Bucks County official knowingly disregarded a risk to Plaintiff's health and safety.   It points out that the Amended Complaint identifies no Bucks County official or employee by name, and instead

6

only makes individualized allegations regarding PrimeCare employees.   It further argues that to the extent that the Amended Complaint alleges that PrimeCare engaged in wrongdoing, the allegations "sound [only] in negligence, bureaucratic inefficiency, or miscommunication" and do not support an inference of knowing disregard.   (Id. (citation omitted).)

Plaintiff responds that the Amended Complaint alleges "repeated notice" to Defendants of "Plaintiff's disability and need for accommodation, repeated complaints of pain at the site of the developing wound, . . . failure to implement preventative protocols, and failure to escalate care despite observable deterioration."   (Pl.'s Mem. at 2-3.)   He maintains that these allegations plausibly support an inference that Defendants knew of and disregarded a substantial risk to Plaintiff's health.

Although the Amended Complaint contains no factual allegations concerning individual Bucks County employees or supervisors,[2] we are unable to find that it does not plausibly allege an underlying constitutional violation, at least with respect to the care provided by PrimeCare and its employees.   The United States Supreme Court has stated that "[c]ontracting out prison medical care," as Bucks County has done here, "does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody."   West, 487 U.S. at 56; see also Argott v. Lackawanna Cnty., Civ. A. No. 22-164, 2023 WL 4485086, at *16 (M.D. Pa. Feb. 6, 2023) (explaining that, despite a county's contract with a medical provider, the county "'remains liable for any constitutional deprivations caused by the policies or customs of'" the provider (quoting Ponzini v. Monroe Cnty., Civ. A. No. 11-413, 2015 WL 5123720, at *11 (M.D. Pa. Aug. 31, 2015)), report and recommendation adopted, 2023 WL 4471567 (M.D. Pa. July 11, 2023).   Thus,

---

[2] The only factual allegation regarding jail personnel is the nonspecific allegation that "Plaintiff repeatedly notified . . . correctional staff . . . of his need for accommodation and of worsening symptoms."   (Am. Compl. ¶ 26.)

as long as the Amended Complaint plausibly alleges a constitutional violation by PrimeCare and its employees, it has sufficiently alleged an underlying constitutional violation that can be the predicate for Plaintiff's Monell claim against Bucks County.

Moreover, we disagree with Bucks County's argument that the allegations of substandard medical care by PrimeCare sound only in negligence. Given the gravity of Plaintiff's visibly infected wound, which is graphically depicted in a color photo in the Amended Complaint (Am. Compl. ¶ 7), and the allegations that medical personnel took no meaningful steps to prevent progression of the more minor wound that Plaintiff allegedly had on intake and, indeed, medical personnel or facility staff removed at least one safeguard designed to protect against pressure injuries (i.e., the custom wheelchair with pressure-relieving features), we find that the Amended Complaint plausibly alleges deliberate indifference. See Natale, 318 F.3d at 582 (recognizing that deliberate indifference may be found where there is "objective evidence that a plaintiff had serious need for medical care, and prison officials ignored that evidence" (quotation omitted)). Accordingly, we reject Bucks County's argument that Monell claim against it should be dismissed because the Amended Complaint fails to plausibly allege an underlying constitutional violation.

2.    Elements of Monell Claim

Bucks County also argues that the Amended Complaint fails to set forth a cognizable Monell claim both because it fails to allege a policy, custom, or pattern of violations and because it fails to adequately allege causation. In response, Plaintiff does not identify, or point to allegations in the Complaint that identify, a specific policy or custom that proximately caused his alleged constitutional injury. See Est. of Roman, 914 F.3d at 798 (requiring a plaintiff to plead sufficient facts to show that a policy or custom exists and that it proximately caused the plaintiff's constitutional deprivation). Instead, he argues that he has sufficiently alleged a Monell violation

8

based on an inadequacy theory, because there were "structural deficiencies" at the jail that demonstrate Bucks County's conscious failure to establish a system to prevent constitutional violations.   (Pl.'s Mem. at 3-4); see Forrest, 930 F.3d at 105 (recognizing the viability of a Monell claim alleging that constitutional injuries were caused by or "by a failure or inadequacy by the municipality that reflects a deliberate or conscious choice" (quotation omitted).)

a. Deliberate Indifference

A municipal defendant may be liable under Monell where it "has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need." Jiminez v. All Am. Rathskeller, Inc., 503 F.3d 247, 250 (3d Cir. 2007) (alteration in original) (quoting Natale, 318 F.3d at 584).   When a Monell claim is grounded on such an inadequacy theory, the plaintiff ordinarily "pleads deliberate indifference by showing that '(1) municipal policymakers know that employees will confront particular situation[,] (2) the situation involves a difficult choice or a history of employees mishandling[,] and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights.'"   Est. of Roman, 914 F.3d at 798 (quoting Doe v. Luzerne Cnty., 660 F.3d 169, 180 (3d Cir. 2011)).   Typically, conduct giving rise to an inadequacy claim "'can only amount to the requisite deliberate indifference' where the failure 'has caused a pattern of violations.'"   Hagwood v. City of Phila., 604 F. Supp. 3d 293, 307 (E.D. Pa. 2022) (quoting Kane v. Chester Cnty. Dep't of Children, Youth & Families, 10 F. Supp. 3d 671, 688 (E.D. Pa. 2014)).   A "single-incident violation" will only support a finding of deliberate indifference where the risk of injury is a "'highly predictable consequence'" of the municipality's failures.   Thomas v. Cumberland Cnty., 749 F.3d 217, 225 (3d Cir. 2014) (quoting Connick v.

9

Thompson, 563 U.S. 51, 64 (2011)).

The Amended Complaint alleges that Defendants "through their policymakers, supervisors, and named medical staff, failed to adopt, implement, or enforce adequate policies, practices, and training protocols for the care of paraplegic detainees." (Am. Compl. ¶ 30.) It specifies that the systemic "failures included inadequate intake screening for high-risk inmates, insufficient pressure-injury prevention measures, failure to ensure appropriate documentation and performance of repositioning, and failure to provide reasonable accommodations required by the ADA and Rehabilitation Act." (Id.) The Amended Complaint does not allege that Bucks County had a history of violating the constitutional rights of paraplegic detainees as a result of these "systemic failures," id., but Plaintiff argues that "[t]he risk of severe pressure ulceration in a paraplegic detainee is well documented in correctional medicine and constitutes a highly predictable consequence of failing to implement basic preventive safeguards" (Pl.'s Mem. at 4). To that end, the Amended Complaint alleges that Bucks County "knew or should have known that the[] deficiencies [in its policies and procedures] posed a substantial risk of serious harm to paraplegic detainees transferred with existing wounds, yet deliberately failed to take reasonable steps to prevent further injury." (Am. Compl. ¶ 58.) Thus, Plaintiff appears to hinge its deliberate indifference claims on a single-incident theory.

Bucks County's analysis of the single incident theory is relegated to a footnote in its brief, where it argues, without elaboration, that there are "no facts alleged here to suggest that Plaintiff's injury" was a "highly predictable consequence" of the County's alleged failures. (Bucks Cnty. Mem. at 7 n.1 (quoting Thomas, 749 F.3d at 225).) However, as noted above, the Amended Complaint alleges that Plaintiff is paraplegic and had a wound on his sacrum on intake. (Am. Compl. ¶¶ 19, 20, 32-33.) Under those simple and straightforward circumstances, a jury could

10

reasonably conclude that progression of his wound into a much more serious pressure injury was a highly predictable consequence of the staff's alleged failure to engage in pressure-injury prevention by, inter alia, monitoring his injury, assisting him with repositioning, providing him with pressure-relieving equipment, responding proactively to his complaints of pain and drainage, and seeking enhanced medical attention upon encountering signs of potential infection.   (See Am. Compl. ¶ ¶ 21-22, 24-26.)   Accordingly, we reject Bucks County's assertion that the Amended Complaint is devoid of facts that could support a conclusion that Plaintiff's injury was a "highly predictable consequence" of Bucks County's alleged failure to enact policies, procedures, or training protocols to address the provision of such preventative care for paraplegic inmates with documented below-waist wounds.   Thomas, 749 F.3d at 225 (quotation omitted).   We therefore reject the County's argument at this early stage that the Amended Complaint does not sufficiently allege deliberate indifference based on a single incident.

Rather, we conclude that the Amended Complaint's factual allegations allow for reasonable inferences that Bucks County knows that paraplegic detainees will require medical and other care that includes protection against pressure-related injuries and that the failure to provide such care is the kind of "wrong choice" that will, with some regularity, result in severe pressure wounds like that which Plaintiff allegedly suffered.   Consequently, we conclude that the Amended Complaint plausibly alleges deliberate indifference that can support a Monell claim against Bucks County.

b.   Causation

Bucks County also argues that the Amended Complaint fails to adequately allege that it had a policy or custom that was the "proximate cause" of Plaintiff's injuries, because it does not demonstrate an "affirmative link" between Bucks County's policies and the alleged constitutional

11

violation.   (Bucks Cnty.'s Mem. at 9 (quoting Estate of Roman, 914 F.3d at 798).)   In its view, the Amended Complaint alleges "that the only actions that allegedly caused harm are those of PrimeCare employees."   Id.

As stated above, however, we understand this case to be proceeding on an inadequacy theory.   In that regard, the Amended Complaint alleges, inter alia, that the County "fail[ed] to implement and enforce adequate intake screening and care-planning for high-risk detainees transferred with existing wounds," "fail[ed] to require and ensure consistent turning, repositioning and skin-integrity monitoring," and "permitt[ed] the confiscation of medically prescribed mobility and pressure-relief equipment without providing alternatives."   (Am. Compl. ¶ 57.)   It further alleges that these inadequacies "were a moving force behind the worsening and progression of Plaintiff's pressure injury to a Stage IV wound and the resulting constitutional violations," and that Plaintiff's physical injury, infection, and hospitalization were the "direct and proximate result of" those inadequacies.   (Id. ¶¶ 59-60.)

These assertions find factual support in the allegations that Plaintiff is a paraplegic who presented at Bucks County Jail with a wound to his sacrum and nevertheless had his custom wheelchair confiscated, was not provided with pressure-relieving equipment, and was not regularly assisted with repositioning.   (Id. ¶¶ 20-22, 24.)   They also find support in the factual allegations that Plaintiff's condition visibly deteriorated, and that Plaintiff repeatedly notified both correctional staff and medical personnel of skin breakdown, drainage, and pain, and yet the staff did not intervene in any way.   (Id. ¶ 26.)   We thus conclude that the Amended Complaint allows for a reasonable inference that there is an affirmative link between Bucks County's failure to initiate protocols or policies to protect against pressure injuries and Plaintiff's exacerbated injury

and hospitalization.[3]   We therefore reject Bucks County's argument to the contrary, and we deny

its Motion insofar as it seeks dismissal of the Monell claim against it.

### B.   ADA and RA

In Counts III and IV of the Amended Complaint, Plaintiff asserts claims against Bucks

County pursuant to the ADA and RA.   "To state a claim under either the ADA or the RA, [a

plaintiff] must allege that [1] he is a qualified individual with a disability, [2] who was precluded

from participating in a program, service, or activity, or otherwise was subject to discrimination,

[3] by reason of his disability."   Furgess v. Pa. Dep't of Corr., 933 F.3d 285, 288-89 (3d Cir. 2019)

(citation omitted); see also 42 U.S.C. § 12132; 29 U.SC. § 794.   In addition, where a plaintiff

seeks damages, as Plaintiff does here, he must allege "intentional discrimination under a deliberate

indifference standard."   Furgess, 933 F.3d at 289 (citation omitted).

"The phrase 'service, program, or activity' . . . is 'extremely broad in scope and includes

anything a public entity does.'"   Id. (quoting Disability Rights N.J., Inc. v. Comm'r, N.J. Dep't

of Human Servs., 796 F.3d 293, 301 (3d Cir. 2015)).   "[H]ealth care is a quintessential service

prisons must provide to prisoners."   Montanez v. Price, 154 F.4th 127, 147 (3d Cir. 2025) (citing

Yeskey v. Commw. of Pa. Dep't of Corr., 524 U.S. 206, 210 (1998)).   However, "failure to

provide adequate medical care to a disabled inmate does not, on its own, give rise to liability under

the ADA or RA."   Id. (citation omitted); DiFraia v. Ransom, 171 F.4th 622, 633 (3d Cir. 2026)

(quoting Montanez, 154 F.4th at 147).   Rather, to support a cognizable claim under either statute

---

[3] In addition, as noted above, there is legal authority for the proposition that Bucks County may be liable for the acts of PrimeCare, including the constitutional violations caused by PrimeCare's policies and customs.   See Argott, 2023 WL 4485086, at *16 (quoting Ponzini, 2015 WL 5123720, at *11).   However, we need not address this potential avenue to liability any further at this time because the Complaint sufficiently alleges that Bucks County's own policies and customs caused Plaintiff's injuries.

based on access to medical care, a detainee must allege "not merely that he was denied medical care *for his disabilities*," but "that he was denied meaningful access to 'medical care' *because of his disabilities*."[4]   Montanez, 154 F.4th at 147 (citation omitted).

Bucks County does not dispute that the Amended Complaint adequately alleges that Plaintiff is an individual with a qualifying disability, i.e., paraplegia.   It argues, however, that the Amended Complaint fails to plausibly allege that Plaintiff was denied access to a service, program, or activity because its allegations concern only the adequacy and timeliness of medical care, the appropriateness of the jail-issued wheelchair, and the facility's repositioning practices and wound care.

The Amended Complaint's ADA claim alleges that Bucks County had actual knowledge of Plaintiff's disability and his need for accommodations, which included "pressure-injury prevention measures, appropriate mobility equipment, assistance with repositioning, and monitoring of skin integrity." (Am. Compl. ¶ 65.)   It alleges that the failure to provide these accommodations denied Plaintiff "meaningful access to safe confinement" and "subjected [him] to conditions that exacerbated his disability and caused preventable injury." (Id. ¶ 67.) Similarly, in the RA claim, the Amended Complaint alleges that Bucks County had actual knowledge of both Plaintiff's disability and his need for accommodations to ensure his "safe and meaningful access to confinement." (Id. ¶ 74.)   It avers that Buck's County's failure to provide the necessary accommodations for his disability resulted in preventable injury and exacerbation of his medical condition.   (Id. ¶ 75.)

---

[4] Thus, where a paralyzed inmate alleges that he could not get to the medical unit to obtain care because he was not provided a mode of transportation, he has stated a claim for denial of access to medical care under the ADA or RA "*because of his disabilities*," but where he alleges only that "he was denied specific medical care *for his disabilities*" or the medical care he received for his disability was inadequate, he has not stated such a claim.   Montanez, 154 F.4th at 147.

14

It appears, therefore, that Plaintiff has attempted to frame his claims not as claims for access to medical treatment, but as claims for access to "safe confinement."   At the same time, he cites no case in which "safe confinement" was found to be a "service, program, or activity" that a penal facility was required to provide.   Instead, he relies exclusively on Furgess, in which the United States Court of Appeals for the Third Circuit held that an inmate with a neuromuscular disease had alleged plausible ADA and RA claims for failure to provide handicapped accessible shower facilities, concluding that a shower constitutes a "program, service, or activity" and that an accessible shower is a reasonable accommodation because it ensures that an inmate with a disability can take a shower "just like able-bodied inmates." 933 F.3d at 290-291; see also Montanez, 154 F.4th at 147-48 (stating that "necessities for hygiene, including showers, sinks, and toilet," as well as "accessible beds" and "appropriate and adequate bedding" are "basic services that prisons must provide," and denial of access to these "fundamental prison service[s]" can support an ADA or RA claim (quotation and citations omitted)).

Furgess does not provide the necessary support for Plaintiff's RA and ADA claims here because, unlike the plaintiff in Furgess, Plaintiff has identified no specific amenity, program, or privilege that is generally available to able-bodied detainees and/or inmates at Bucks County jail and that he was unable to access because of his paraplegia.   Rather, he alleges only that he was denied proper treatment of, and attention to, his sacral wound, and denied access to equipment and repositioning assistance to protect against pressure injuries.   Accordingly, although Plaintiff tries to characterize his claims as claims for denial of accommodations necessary for "safe confinement," they are, at bottom, claims based on denial of medical care and other treatment for his disabilities, which are not cognizable under the RA or ADA.   See DiFraia, 171 F.4th at 633 (cautioning against "conflat[ing] a method of treating a disability with an accommodation" and

15

stating that a plaintiff may not "repackage" a complaint that he is not getting desired treatment by labelling the treatment a "reasonable accommodation"). We therefore conclude that Plaintiff has failed to state an RA or ADA claim upon which relief can be granted, because he has failed to identify a "program, service, or disability" to which he was denied access, and we grant Bucks County's Motion to Dismiss those claims against it on that basis.

## IV. CONCLUSION

For the foregoing reasons, we grant Bucks County's Motion in part and deny it in part. Specifically, we grant it insofar as it sees dismissal of Plaintiff's RA and ADA claims, but deny it insofar as it seeks dismissal of the <u>Monell</u> claim. An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova, J.

John R. Padova, J.