IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH WALSH | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| BUCKS COUNTY, ET AL. | : | NO. 25-5978 |

**MEMORANDUM**

**Padova, J.** **November 2, 2026**

Plaintiff Joseph Walsh, who is paraplegic, commenced this action alleging civil rights violations and disability discrimination after he developed a severe, infected pressure ulcer while incarcerated as a pretrial detainee in county facilities. The Amended Complaint names as Defendants Montgomery County, Bucks County, PrimeCare Medical, Inc. ("PrimeCare"), medical personnel employed by PrimeCare at the Bucks County Jail, and various Jane and John Doe correctional officers and/or supervisory personnel employed by Bucks and Montgomery Counties.

Montgomery County has filed a Motion to Dismiss the three claims asserted against it, i.e., claims pursuant to 42 U.S.C. § 1983, the Rehabilitation Act (the "RA"), 29 U.S.C. § 701 et seq., and the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12101 et seq. Plaintiff concedes that the RA and ADA claims should be dismissed,[1] but opposes dismissal of the § 1983 claim, which seeks to impose municipal liability pursuant to Monell v. Department of Social Services, 436 U.S. 658 (1978). For the following reasons, we grant Defendant's Motion insofar as it seeks dismissal of the Monell claim as well as the RA and ADA claims, and we dismiss

[1] In a prior Memorandum and Order, we granted in part a Motion to Dismiss filed by Defendant Bucks County, dismissing Plaintiff's RA and ADA claims against Bucks County for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Walsh v. Montgomery Cnty., Civ. A. No. 25-5978, 2026 WL 1471208, at *7-8 (E.D. Pa. May 26, 2026). Plaintiff states that, in light of our analysis of the RA and ADA claims in that Memorandum, he does not oppose dismissal of the same claims against Montgomery County. (Pl. Resp. in Opp. to Def.'s Mot. at 1.)

Montgomery County as a Defendant in this action.

## I. BACKGROUND

The Amended Complaint alleges that Plaintiff is a paraplegic male who lacks sensation or mobility below his waist. (Am. Compl. ¶¶ 4, 19.) Plaintiff was incarcerated as a pretrial detainee at the Montgomery County Correctional Facility ("MCCF") for some unspecified period of time prior to being transferred to the Bucks County Jail on August 23, 2024. (Id. ¶¶ 4, 9, 31, 49.) Plaintiff's intake evaluation notes at the Bucks County Jail document that he had a "'wound to sacrum,'" but no documented Stage III or IV pressure injuries. (Id. ¶¶ 19-20.) According to the Amended Complaint, "[t]he presence of a sacral wound at intake demonstrates that Plaintiff's pressure injury developed, or began developing, while Plaintiff was in the custody of Montgomery County . . . ." (Id. ¶ 34.) Plaintiff's wound worsened while at the Bucks County Jail, and when Plaintiff was released on September 25, 2024, he went directly to the emergency room, where hospital staff immediately recommended debridement, which revealed a Stage IV pressure injury. (Id. ¶ 27.) Plaintiff was sent home after treatment, but because of the severity of the wound and Plaintiff's inability to manage it independently, he returned to the hospital within hours, and he has been undergoing medical treatment as a result of his injury since that time. (Id. ¶ 28.)

The Amended Complaint alleges that, during Plaintiff's incarceration at both MCCF and the Bucks County Jail, he "repeatedly notified correctional and medical staff of his disability-related needs and heightened risk of pressure injury." (Id. ¶ 5.) Despite these notifications, "Defendants failed to . . . implement basic preventative care protocols." (Id.) Indeed, according to the Amended Complaint, Montgomery County, "through [its] policymakers [and] supervisors . . . failed to adopt, implement, or enforce adequate policies, practices, and training protocols for the care of paraplegic detainees." (Id. ¶ 30.) "These failures included . . . insufficient pressure injury

prevention measures . . . ." (Id.)

Plaintiff commenced this action in mid-October 2025, and filed the Amended Complaint on January 27, 2026. PrimeCare and the individually-named Defendants filed a joint Answer to the Amended Complaint on February 9, 2026. Bucks County filed a Motion to Dismiss that we granted in part and denied in part on May 26, 2026. As of the date of that Order, Montgomery County had not yet been served with the Amended Complaint. Plaintiff served Montgomery County with the Amended Complaint on July 15, 2026, and Montgomery County then filed its now-pending Motion to Dismiss.

## II. LEGAL STANDARD

When deciding a motion to dismiss pursuant to Rule 12(b)(6), we "consider only the complaint, exhibits attached to the complaint, [and] matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon [those] documents." Alpizar-Fallas v. Favero, 908 F.3d 910, 914 (3d Cir. 2018) (quoting Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010)). We "accept[] all well-pleaded allegations in the complaint as true and view[] them in the light most favorable to the plaintiff." Talley v. Pillai, 116 F.4th 200, 206 (3d Cir. 2024) (quoting Warren Gen. Hosp. v. Amgen Inc., 643 F.3d 77, 84 (3d Cir. 2011)). However, "we need not accept as true a legal conclusion couched as a factual allegation." Host Int'l, Inc. v. MarketPlace, PHL, LLC, 32 F.4th 242, 248 (3d Cir. 2022) (quotation and citation omitted).

A plaintiff's pleading obligation is to set forth "a short and plain statement of the claim," which "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (first quoting Fed. R. Civ. P. 8(a)(2); then quoting Conley v. Gibson, 355 U.S. 41, 47 (1957) (second alteration in original)). The complaint must allege "'sufficient factual matter to show that the claim is facially plausible,'

thus enabling 'the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged.'" Warren Gen. Hosp., 643 F.3d at 84 (quoting Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)). While a complaint "does not need detailed factual allegations," it must include at least a modicum of facts that "nudge[ ] . . . claims across the line from conceivable to plausible." Twombly, 550 U.S. at 555, 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). In the end, we will grant a motion to dismiss brought pursuant to Rule 12(b)(6) if the factual allegations in the complaint are not sufficient "to raise a right to relief above the speculative level." Geness v. Admin. Off. of Pa. Cts., 974 F.3d 263, 269 (3d Cir. 2020) (quoting Twombly, 550 U.S. at 555).

## III. DISCUSSION

In Count II of the Amended Complaint, Plaintiff asserts a claim pursuant to 42 U.S.C. § 1983 and Monell against Montgomery County for violation of his constitutional rights arising out of the inadequate medical care he was allegedly provided at MCCF. Montgomery County has moved to dismiss this claim, arguing that the Amended Complaint fails to state a cognizable Monell claim against it because it fails to plausibly allege an underlying constitutional violation by any employee or agent of Montgomery County.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988) (citations omitted). A municipality like Montgomery County "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." Monell, 436 U.S. at 694. Instead, to assert

a § 1983 claim against a municipality, i.e., a Monell claim, a plaintiff must allege that his constitutional deprivations were caused by an official policy or custom of the municipality or "by a failure or inadequacy by the municipality that 'reflects a deliberate or conscious choice.'" Forrest v. Parry, 930 F.3d 93, 105 (3d Cir. 2019) (quoting Estate of Roman v. City of Newark, 914 F.3d 789, 798 (3d Cir. 2019)); see also Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 403 (1997) (citations omitted); City of Canton v. Harris, 489 U.S. 378, 388-89 (1989); Reitz v. Cnty. of Bucks, 125 F.3d 139, 145 (3d Cir. 1997) (citing Harris, 489 U.S. at 388-89). "It is well-settled that, if there is no violation in the first place, there can be no derivative municipal claim." Mulholland v. Gov't Cnty. of Berks, 706 F.3d 227, 238 n.15 (3d Cir. 2013) (citing Los Angeles v. Heller, 475 U.S. 796, 799 (1986)) (additional citation omitted); see also Heller, 475 U.S. at 799 (stating that if a municipal employee "inflicted no constitutional injury . . . , it is inconceivable that [the municipality] could be liable").

Plaintiff, as a pretrial detainee, alleges that Montgomery County violated his rights under the Fourteenth Amendment. For pretrial detainees like Plaintiff, claims related to the constitutionality of prison conditions are evaluated under the Due Process Clause of the Fourteenth Amendment. See Hubbard v. Taylor, 399 F.3d 150, 158 (3d Cir. 2005). In order to state a Fourteenth Amendment claim arising from a prison's provision of inadequate medical care, a plaintiff must allege facts that raise a reasonable inference that that prison personnel acted with deliberate indifference to his serious medical need. Farmer v. Brennan, 511 U.S. 825, 835 (1994).[2] "'[D]eliberate indifference to serious medical needs of prisoners" is "the unnecessary

[2] Farmer discusses the deliberate indifference standard applicable to Eighth Amendment claims brought by convicted prisoners. The standard applicable to claims related to prison conditions is essentially the same under the Eighth and Fourteenth Amendments. See Parkell v. Morgan, 682 F. App'x 155, 159-60 (3d Cir. 2017) (per curiam) (citations omitted); see also Moore v. Luffey, 767 F. App'x 335, 340 n.2 (3d Cir. 2019) (citing Natale v. Camden Cnty. Corr. Facility,

and wanton infliction of pain." Tate v. Wiggins, 805 F. App'x 159, 162 (3d Cir. 2020) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). A prison official is only deliberately indifferent if he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. A serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering." Colburn v. Upper Darby Twp., 946 F.2d 1017, 1023 (3d Cir. 1991). "[M]ere medical malpractice" does not give rise to a constitutional violation. Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990) (citing Estelle, 429 U.S. at 106).

Here, the only facts alleged with regard to Plaintiff's stay in Montgomery County are that he arrived at MCCF on an unspecified date, that a sacral wound "developed or began developing" while Plaintiff was in Montgomery County's custody, and that Plaintiff transferred out of MCCF on August 23, 2024 with a wound on his sacrum. (Am. Compl. ¶¶ 5, 19-20, 34.) Based on those sparse factual allegations, the Amended Complaint conclusively alleges that "Montgomery County failed to adequately identify, monitor, and protect Plaintiff from the development of pressure injuries during his incarceration at [MCCF], despite Plaintiff's known paraplegia and heightened risk," and that Montgomery County's failure "to implement adequate intake screening, pressure injury prevention measures, and medical monitoring contributed to the initial development and early progression of Plaintiff's sacral wound." (Am. Compl. ¶¶ 36-37.)

Plaintiff's allegations regarding Montgomery County's failures are "'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (alteration in original) (quoting Twombly, 550 U.S. at 557). Such allegations simply do not suffice to support a plausible claim

---

318 F.3d 575, 581 (3d Cir. 2003)).

that Plaintiff suffered a constitutional injury at MCCF that was the result of deliberate indifference. There are no allegations concerning Plaintiff's condition when he arrived at MCCF, the intake procedures that were implemented upon his arrival, the pressure injury prevention measures that were (or were not) taken to protect Plaintiff from incurring pressure injuries, or how Plaintiff was otherwise treated by medical or non-medical staff while he was at the facility. There are no allegations as to how the intake screening and risk assessment that was performed on Plaintiff at MCCF was inadequate, how the pressure injury prevention and medical monitoring that Plaintiff received at MCCF was unresponsive to Plaintiff's needs, or how the MCCF staff who were responsible for his care fell short. There are therefore no factual allegations that plausibly suggest that prison personnel at MCCF disregarded Plaintiff's serious medical needs as a paraplegic inmate and did not attempt to meet those needs. There are certainly no allegations that are suggestive of conduct involving the "wanton infliction of pain" that is the hallmark of deliberate indifference. Tate, 805 F. App'x at 162. Rather, in the absence of any facts suggesting deliberate indifference, it is purely speculative that Plaintiff's wound was the result of deliberate indifference at MCCF as opposed to an unfortunate result of either caring and compassionate care or, in the alternative, "mere medical malpractice."[3] Brown, 903 F.2d at 278. We therefore conclude that Plaintiff has not "nudged [his] claim[] across the line from conceivable to plausible," Twombly, 550 U.S. at 570, and has not "raise[d] [his] right to relief above the speculative level," id. at 555 (citation omitted).

[3] The lack of allegations concerning Plaintiff's stay at MCCF stand in stark contrast to the specific allegations concerning Plaintiff's stay at the Bucks County Jail, which underlie Plaintiff's Monell claim against Bucks County. (See, e.g., Am. Compl. ¶¶ 21-22, 25-26 (alleging that staff at the Bucks County Jail confiscated Plaintiff's custom wheelchair with pressure-relieving features, and failed to provide pressure-relieving equipment, conduct regular skin integrity assessments, assist him with repositioning in bed, or escalate care when his sacral wound showed signs of infection).

In sum, the Amended Complaint does not allow for a reasonable inference that Montgomery County personnel were deliberately indifferent to the serious medical needs Plaintiff presented on account of his paraplegia, such that it plausibly alleges an underlying constitutional violation that can support a cognizable Monell claim against Montgomery County.[4] Indeed, the mere fact that Plaintiff developed a wound on his sacrum at MCCF, combined with generic allegations that Montgomery County failed to prevent that injury, without more, simply does not raise a reasonable inference that the care he received at MCCF was constitutionally deficient.

## IV. CONCLUSION

For the foregoing reasons, we grant Montgomery County's Motion in full, dismiss all of the claims against Montgomery County, and dismiss Montgomery County as a Defendant in this action. An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova, J.

John R. Padova, J.

[4] For purposes of this motion, we accept that Plaintiff's paraplegia, in its own right, is a "serious medical need." See Turner v. Kirsch, Civ. A. No. 08-2005, 2011 WL 1430300, at *5 (E.D. Pa. Apr. 13, 2011) (stating that "a medical condition which threatens a plaintiff's ability to walk . . . falls within the ambit of a serious medical need." (quotation and citations omitted)).